UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BUSCH MARINE GROUP, INC.
and GREGORY J. BUSCH,

    Plaintiffs/Counter-Defendants,

v.

CALUMET RIVER FLEETING, INC.,

    Defendant/Counter-Plaintiff,

and

GREAT AMERICAN INSURANCE COMPANY,

    Defendant.

Civil Case No. 20-cv-11427
Honorable Linda V. Parker

_____

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR ENTRY OF FINAL JUDGMENT AND FOR ATTORNEYS' FEES (ECF NO. 63)**

On July 26, 2022, this Court issued an opinion and order in this action, granting summary judgment to Busch Marine Group, Inc. and Gregory J. Busch (collectively "Busch") on their claims that Calumet River Fleeting, Inc. ("Calumet") breached two contracts: (i) a contract to purchase the vessel "STC 2004" ("the Barge"), and (ii) a contract to charter the Barge. (ECF No. 61.) The Court also granted summary judgment to Busch on Calumet's counterclaim for fraudulent misrepresentation. The remaining claims were dismissed or had been

dismissed previously.  Now before the Court is Busch's motion for judgment consistent with that decision and the governing contracts, which the Court construes as a renewal of its summary judgment motion on the issue of damages, filed pursuant to Rule 56 of the Federal Rules of Civil Procedure.  (ECF No. 63.)  The motion has been fully briefed.  (ECF Nos. 64, 66.)  Finding the facts and legal issues sufficiently presented in the parties' filings, the Court dispenses with oral argument pursuant to Eastern District of Michigan Local Rule 7.1.

## Background[1]

On April 24, 2014, Busch and Calumet executed a contract pursuant to which Calumet agreed to purchase the Barge ("Sales Contract").  (ECF No. 41-5 at Pg ID 801).  The agreed upon price was $575,000, of which $50,000 was a nonrefundable deposit due (and presumed paid) when the agreement was signed.  (*Id*. at Pg ID 800, ¶ 2.)  The closing date originally was "on or about May 18, 2019" (*id.*); however, in a subsequent Closing Date Extension Addendum, it was moved to June 7, 2019 (ECF No. 41-6 at Pg ID 803).

Prior to the June 7 closing, Calumet needed a barge.  Therefore, on May 31, 2019, Busch and Calumet executed a Barge Bareboat Charter Agreement ("Charter Agreement").  (ECF No. 41-7.)  The Charter Agreement identifies the "Charter

---

[1] Only the facts relevant to assessing damages are recited, with the assumption of the reader's familiarity with the remaining facts set forth in the Court's July 26 decision.

Period" as extending from the time the Barge leaves Busch's facility in Saginaw, Michigan, until "the barge sale is final between [Calumet and Busch]." (*Id.* at Pg ID 805, ¶ 1(b).) The amount agreed to for the charter was: "25,000.00 only in the event the sale of the barge is not completed. If there is no sale the charterer will return the barge to Busch Marine Dock in Carrolton Michigan at Charterer's expense." (*Id.* ¶ 1(c).)

No costs of mobilization or demobilization were provided for in the Charter Agreement, nor was a security deposit required. (*Id.* ¶ 1(e), (f).) The first month's charter payment was listed as "$00.00[.]" (*Id.* at Pg ID 806, ¶ 1(g).) Reflecting the parties' expectation that the Barge's sale would successfully close, the Charter Agreement states: "Payment of charter hire shall continue without termination, abatement or suspension for any cause until such day as the sale of barge is complete at the termination of the charter . . .." (*Id.* at Pg ID 807, ¶ 6.)

The parties agreed that "[c]ontroversy or claims arising out of or relating to [the Charter Agreement], or the breach thereof" would "be governed by the general maritime laws of the United States, insofar as appliable, otherwise by the laws of the State of Florida."[2] (*Id.* at Pg ID 811, ¶ 16.) The parties further agreed that Calumet would be obligated to pay "all reasonable legal fees, expenses and costs"

---

[2] The Sales Contract did not include a choice of law provision; however, the parties have proceeded as if Michigan law controls. (*See* ECF No. 41 at Pg ID 620; ECF No. 43 at Pg ID 934.)

incurred by Busch if Busch retained an attorney or filed a lawsuit to enforce any terms of the Charter Agreement. (*Id*. at Pg ID 815, ¶ 29.)

Calumet took possession of the Barge on June 1, 2019. (ECF No. 41-2 at Pg ID 759; ECF No. 43-9 at Pg ID 1032, 1036, 1038.) Two days later, Calumet's captain, who was operating the Barge, discovered that it was taking on water. (ECF No. 43-9 at Pg ID 1033, 1039.) After a stop in Duluth, Minnesota, the Barge was taken to a dry dock in Escanaba, Michigan, where it arrived the evening of June 7. (*Id.* at Pg ID 1033, 1034, 1042.) There, Calumet picked up a new barge to complete its job. (*Id*.)

In the meantime, on June 6, Calumet conveyed to Busch's broker that Calumet wanted to call off the sale. (ECF No. 41-15 at Pg ID 867.) The following day, Calumet informed Busch that Calumet would not be purchasing the Barge because Calumet had not received certain documentation. (ECF No. 41-16 at Pg ID 869.) The Barge was still sitting in Escanaba when Busch filed its motion for summary judgment in this matter on October 22, 2021. (ECF No. 41 at Pg ID 627.)

As indicated, in its July 26 decision, the Court found no genuine issue of material fact with respect to Busch's breach of contract claims and held, as a matter of law, that Calumet breached the Sales Contract and Charter Agreement. (ECF No. 61 at Pg ID 2516, 2521.) Busch now seeks a judgment for the damages

4

it claims it incurred as a result of Calumet's breaches: (a) the $525,000 purchase price for the Barge under the Sales Contract, plus interest pursuant to Michigan Compiled Laws § 600.6013; (b) $4,350,000.00, reflecting a weekly rate of $25,000.00 for the charter running from the date of possession until the date of Busch's motion, plus an additional $25,000 per week until the date judgment is entered; (c) attorney's fees of $84,988.06; and (d) costs of $4,751.51. Busch argues that Calumet waived any objections to these amounts—which were set forth in its summary judgment motion specifically as to (a) and (b) and generally as to (c) and (d)—by not responding to Busch's damages arguments in that motion.

In response, Calumet takes issue with the asserted waiver and the entry of judgment without the issue of damages being presented to a jury. As to the amounts sought, Calumet maintains that the Charter Agreement does not support a damages award based on $25,000 *per week* through the date of Judgment. Calumet argues that, instead, the agreement contemplated a one-time payment of $25,000 if the sale of the Barge did not go through. Calumet further argues that Busch had a duty to mitigate its damages, which included retaking possession of the Barge when it had an opportunity to do so—which, presumably, was well before any final judgment here. Moreover, Calumet asserts, Busch is not entitled to damages for both the breach of the Sales Contract *and* Charter Agreement as such an award far

5

exceeds an amount necessary to put Busch in as good a position as it would have been absent any breach.

Calumet does not dispute Busch's entitlement to an award of its attorney's fees and costs. However, Calumet argues that Busch's requested fees are not reasonable because Busch only succeeded on some of the claims asserted.

## Applicable Law and Analysis

Before addressing the amount of Busch's claimed damages, two preliminary matters require discussion. First, whether this Court may decide the damages due to Busch or whether the decision must go to a jury. Second, whether Calumet waived its objections to Busch's requested damages by failing to respond to those requests, which were first raised in Busch's summary judgment motion.

The answer to the first question depends, as does any motion for judgment, on whether there are material questions of fact. Damages may be assessed by the court where, based on the undisputed facts, the plaintiff is entitled to a specific amount as a matter of law. *See* Fed. R. Civ. 56(a); *Kmart Corp. v. 21 Century Pets, Inc.*, 54 F. App'x 220 (6th Cir. 2003) (affirming summary judgment as to damages in the plaintiff's favor where the defendants failed to create a genuine issue of material fact). The Court concludes, for the reasons explained more fully below, that this is the case here.

The second question in fact does not require resolution. This is because, even absent Calumet's arguments, the Court is duty bound to examine the merits of Busch's requests and confirm that Bush has satisfied its burden of proof and is entitled to the damages sought as a matter of law. *FTC v. EMA Nationwide, Inc.*, 767 F.3d 611, 629-30 (6th Cir. 2014) (explaining that a party's failure to respond to a summary judgment motion does not "end the district court's analysis" because a court may not grant an unopposed summary judgment motion "without conducting its own, searching review"). The Court proceeds to do so.

Whether applying Michigan, Florida, or maritime law, a party prevailing on a breach of contract claim is entitled to damages in an amount necessary to put the party in the same position it would have been absent the breach. *See Grupo HGM Tecnologias Submarina, S.A. v. Energy Subsea, LLC*, 566 F. Supp. 3d 1219, 1229 (S.D. Ala. 2021) (citing *San Carlos Irrigation & Drainage Dist. v. United States*, 111 F.3d 1557, 1562 (Fed. Cir. 1997)) (maritime law); *Seguros Banvenez, S.A. v. S/S Oliver Drescher*, 761 F.2d 855, 860-61 (2d Cir. 1985) (maritime law); *Elite Int'l Enter., Inc. v. Norwall Grp., Inc.*, 628 F. App'x 370, 374 (6th Cir. 2015) (citing *Demirjian v. Kurtis*, 91 N.W.2d 841, 843 (Mich. 1958)) (Michigan law); *Christie v. Royal Caribbean Cruises, Ltd.*, 497 F. Supp. 3d 1227, 1233 (S.D. Fla. 2020) (citing *Capitol Envtl. Servs, Inc. v. Earth Tech, Inc.*, 25 So. 3d 593, 596 (Fla. 1st Dist. Ct. App. 2009)) (Florida law). There is no material issue of fact as to that

7

amount for purposes of Busch's breach of contract claim premised on the Sales Contract.

It is beyond dispute that the purchase price for the Barge was $575,000, with Calumet paying a $50,000 deposit. Thus, Busch is entitled to $525,000 to put it in the exact same position it would have been had Calumet not breached the Sales Contract. Busch also is entitled to the barge charter hire of $25,000.00 as the Charter Agreement reads: "The barge charter hire will be $25,000, *only in the event the sale of the barge is not completed*." (ECF No. 41-7 at Pg ID 805 (emphasis added).)

The Charter Agreement reflects the parties' intent that, if the sale of the Barge was not completed, Calumet would return the Barge to Busch in Saginaw. This does not mean that Busch is entitled to $25,000 per week for the time the Barge was not put in Busch's possession. The Charter Agreement does not contemplate a $25,000 per week—much less month—charter hire. Instead, the Charter Agreement reflects monthly charter payments of "$00.00." To put Busch in the position the parties contemplated absent a breach, the Barge would have been returned to Busch in Saginaw. Thus, arguably, Busch would be entitled only to the additional cost of retrieving the Barge, itself.[3]

---

[3] Even if the Charter Agreement could be construed as providing for a monthly charter payment beyond the single $25,000 payment, Busch would not be entitled

However, an award to Busch under the Charter Agreement for the cost of retrieving the Barge is at odds with an award of damages based on the Sales Contract breach. Put differently, if Calumet had completed its performance under the Sales Contract, Busch was entitled to nothing under the Charter Agreement beyond the $25,000 discussed above—neither money nor a return of the Barge as, at this point, it would have belonged to Calumet. The damages to which Busch is entitled under the Charter Agreement must be assessed from that position (i.e., that Busch has been returned to the position it would have been if the Sales Contract had not been breached). Otherwise, Busch receives a windfall.

While not precisely analogous—as Busch's breach of contract claims are not alternative theories of recovery but claims based on two different contracts—the

---

to a damages calculation based on that monthly rate multiplied by the number of months the Barge has been out of its possession. "[A] party injured by a breach cannot recover damages which arise by reason of his own inactivity or imprudence . . .." *Transportes Navieros y Terrestes, S.A. de D.V. v. Fairmount Heavy Transp. N.V.*, No. 07 CV 3076, 2007 WL 1989309, at *5 (S.D.N.Y. July 6, 2007) (unpublished) (quoting *Glidden Co. v. Hellenic Lines, Ltd.*, 315 F.2d 162, 164 (2d Cir. 1963)); *see also id.* (quoting *Dongbu Express Co. v. Navios Corp.*, 944 F. Supp. 235, 238 (S.D.N.Y. 1996)) ("Even if an aggrieved party is otherwise blameless, it has a duty to mitigate its damages."). No reasonable juror could find on the facts presented that Busch did what it reasonably could to mitigate its damages between June 7, 2019, when Calumet abandoned the Barge in Escanaba, and today. Nevertheless, what exactly Busch should have done to mitigate its damages and how quickly Busch should have acted would be questions ultimately for a jury. These questions do not need to be tried, however, because—as will be explained—any award to Busch on the Charter Agreement beyond the $25,000 already discussed would create a windfall to Busch.

law is clear that a party cannot obtain a double recovery for the same wrong. *See, e.g., F.W.F. Inc. v. Detroit Diesel Corp.*, 494 F. Supp. 2d 1342, 1352 (S.D. Fla 2007) (citing 25 Am. Jur. 2d Election of Remedies § 13 (2007)); *see also Democratic Republic of Congo v. Air Capital Grp., LLC*, 614 F. App'x 460, 474 (11th Cir. 2015) (indicating that a damages award should be set aside when the damages exceed the plaintiff's actual loss). As such, the Court holds that Busch is entitled to damages in the amount of $525,000 for breach of the Sales Contract, and $25,000 under the Charter Agreement because the sale was not completed.

This leaves Busch's requested attorney's fees and costs, which Calumet does not dispute generally but only as to the amount of fees requested.[4] Under maritime law, "reasonableness" is the guiding standard for an attorney fee award. *Gen. Elec. Credit Corp. v. Oil Screw Triton VI*, 712 F.2d 991, 995 (5th Cir. 1983). The Court finds Busch's requested fees reasonable, whether a lodestar analysis is applied or a simple examination of the "the claimed attorney[] fees and costs for reasonableness[.]" *See Malin Int'l Ship Repair & Drydock, Inc. v. M/V Seim Swordfish*, 611 F. Supp. 2d 627, 634-35 (E.D. La. 2009), *aff'd* 369 F. App'x 553

---

[4] In fact, the Charter Agreement expressly provides for an award of attorney's fees and costs to hire counsel and/or file a lawsuit. (ECF No. 41-7 at Pg ID 815, ¶ 29.) Under maritime law, where a contract provides for attorney's fees to the prevailing party, the court lacks the discretion to decline to enforce the provision. *Cable Marine, Inc. v. M/V Trust Me II*, 632 F.2d 1344, 1345 (5th Cir. 1980) (citation omitted).

(5th Cir. 2010). The dismissal of Busch's alternative theories of recovery does not warrant a reduction of the requested fees. *See Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters."). Busch has prevailed "on the significant issues in the litigation." *Id*. at 433.

## Conclusion

For the reasons set forth above, the Court is **GRANTING IN PART AND DENYING IN PART** Busch's' Motion for Entry of Final Judgment and for Attorneys' Fees (ECF No. 63) in that the Court concludes that Calumet is liable to Bush for $550,00.00 in damages, plus interest pursuant to Michigan Compiled Laws Section 600.6013 commencing on June 7, 2019, attorneys' fees of $84,988.06, and costs of $4,751.51.

Plaintiffs shall prepare and submit a judgment consistent with this Opinion and Order.

**SO ORDERED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: April 13, 2023